FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LATOYA B.,[1] | No. 1:18-cv-03207-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 16, 21 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 21. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla [,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §
1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §
416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work
activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial
gainful activity," the Commissioner must find that the claimant is not disabled.  20
C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two.  At this step, the Commissioner considers the severity of the
claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from
"any impairment or combination of impairments which significantly limits [his or
her] physical or mental ability to do basic work activities," the analysis proceeds to
step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy
this severity threshold, however, the Commissioner must find that the claimant is
not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity.  20 C.F.R. §
416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  20 C.F.R. § 416.946.  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 18, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of March 1, 2013. Tr. 80, 190-95. The application was denied initially, Tr. 107-114, and on reconsideration, Tr. 119-24. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 10, 2017. Tr. 37-79. On October 25, 2017, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 18, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments:

ORDER - 6

degenerative disc disease, asthma, depression, post-traumatic stress disorder (PTSD) and a history of substance use disorder with ongoing marijuana use. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to extremes of heat or cold; must avoid concentrated exposure to pulmonary irritants and hazards. She is capable of simple, routine, repetitive tasks over an eight-hour workday with customary breaks. She can have occasional, very brief interaction with the general public; brief interaction with co-workers; and can accept supervisions [sic].

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as semi-conductor wafer breaker, table worker, and cutter/paster. Tr. 26. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application, March 18, 2015, though the date of the decision. *Id.*

On August 24, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ conducted a proper step-two analysis;

4. Whether the ALJ conducted a proper step-three analysis; and

5. Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 2.

## DISCUSSION

**A.      Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the opinions of Mr. Jeffrey Petruso, a single decision maker (SDM); Dr. Charles Lee, a nonexamining medical consultant; Dr. Paul Emmans,[3] a treating physician; Dr. Jennifer Schultz, a

---

[3] The ALJ and Defendant refer to Dr. Paul Emmans as Dr. Emmaus.

ORDER - 8

consultative examiner; and Ms. Melissa Belding, a treating counselor. ECF No. 16 at 8-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1996)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Jeffrey Petruso, SDM and Charles Lee, M.D.

Plaintiff contends that the ALJ improperly considered Dr. Lee's opinion, a non-examining medical consultant, because Dr. Lee adopted the opinion of Jeffrey Petruso, a single decision maker. ECF No. 16 at 9. Thus, this argument requires separate analysis of the ALJ's treatment of Mr. Petruso's opinion and the medical opinion of Dr. Lee.

#### a. Mr. Petruso

Mr. Petruso, a single decision maker,[4] opined that Plaintiff is limited to light work, except she can only stand and/or walk six of eight hours in a day, sit six of

---

[4] Under the single decision maker model, a State agency disability analyst is able to determine a claimant's eligibility for benefits and sign the determination, without having a medical consultant sign the determination, though the analyst

eight hours per day, occasionally engage in postural activities and needs to avoid concentrated exposure to extreme heat, extreme cold and hazards. Tr. 87-88. Mr. Petruso indicated the limitations on standing, walking and sitting require Plaintiff to "periodically alternate sitting and standing to relieve pain and discomfort." Tr. 87. The ALJ did not separately analyze Mr. Petruso's opinion, but rather evaluated the "State agency consultants' light assessments." Tr. 23.

An ALJ may not accord any weight to a non-physician SDM opinion. *Morgan v. Colvin*, 531 Fed. App'x 793, 794-95 (9th Cir. June 21, 2013) (unpublished) (citing Program Operations Manual System DI 24510.050). However, an ALJ must consider the opinions of medical consultants, even when the medical consultant affirmed the SDM's opinion without the addition of any further analysis. *Id.* at 795. Other courts have held that an ALJ may rely on a medical consultant's opinion that affirms a SDM's opinion. *See, e.g., Sanford v. Berryhill,* No. C17-5820-MAT, 2018 WL 3135845 at *3 (W.D. Wash. June 27, 2018); *Bays v. Colvin*, No. 2:14-CV-01564, 2015 WL 769784, at *22 (S.D.W. Va. Feb. 23, 2015). Here, the ALJ's statement that he evaluated the "State agency consultants' light assessments," Tr. 23, indicates he erroneously believed Mr.

_____

should have a psychological consultant complete the medical section, and mental RFC, if there is evidence of a mental impairment. 20 C.F.R. § 416.1406(b)(2).

Petruso, an SDM, was a medical consultant. *Id.* Mr. Petruso's determination was signed only by himself and a psychological consultant, Bruce Eather, Ph.D.; a medical consultant did not sign the determination. Tr. 92.

In *Morgan,* the ALJ erroneously noted an SDM was a medical consultant and gave the opinion substantial weight. *Morgan,* 531 Fed. App'x at 795. The ALJ relied on the SDM's opinion in finding the plaintiff was capable of performing light work. *Id.* Though a medical consultant affirmed the SDM's opinion, the Ninth Circuit held that the ALJ's error was not harmless because the court could not determine if the ALJ would give the same substantial weight to a physician's opinion that affirmed an SDM's opinion as the ALJ gave when she mistakenly believed it was a physician's opinion. *Id.* Here, it appears the ALJ erroneously believed the SDM was a physician. *See* Tr. 23. The ALJ gave Mr. Petruso's opinion "partial weight" and stated he "agrees that the claimant's MRI findings do not require postural restrictions below the occasional level" and "agrees that the claimant should avoid concentrated exposure to cold, heat and hazards." Tr. 23. The ALJ's assignment of any weight to the SDM's opinion was improper. *See Morgan*, 531 Fed. App'x at 794-95.

The ALJ's RFC determination and hypothetical posed to the vocational expert included the SDM's postural and environmental limitations. Tr. 20, 72. As such, the ALJ's step five determination that Plaintiff could perform other work

ORDER - 12

relied, in part, on the SDM's opinion. Like *Morgan,* a later affirmation of the SDM's opinion by a physician does not render the error harmless in this case. The Court cannot determine if the ALJ would have given the same weight to the opinions if he had known the opinion originated from an SDM.

Accordingly, the ALJ erred in his analysis of Mr. Petruso's opinion. On remand, the ALJ is instructed to give no weight to Mr. Petruso's opinion and to reconsider the weight that should be given to the other opinion evidence, in light of the appropriate analysis of Mr. Petruso's opinion.

### b. Dr. Lee

Dr. Lee opined Plaintiff can engage in light work, except she can only stand and/or walk six of eight hours in a day, sit six of eight hours per day, occasionally engage in postural activities and needs to avoid concentrated exposure to extreme heat, extreme cold and hazards. Tr. 100-01. Dr. Lee also opined Plaintiff needs to periodically alternate between sitting and standing. Tr. 101. The ALJ gave Dr. Lee's opinion "partial weight." Tr. 23. Plaintiff contends Dr. Lee's opinion was "effectively a rubber-stamp to the SDM" and should not have been afforded any weight under *Morgan.* ECF No. 16 at 9.

While disability analysts prepare rationales and determinations, medical consultants must complete the medical portion of the case review and complete the RFC. Program Operations Manual Systems DI 24501.001. Medical consultants

must evaluate the case and review determinations to ensure their integrity. *Id.* Here, Dr. Lee recommended a "light RFC", with no further written analysis or explanation. Tr. 405. He then signed a disability determination with an RFC identical to the one set forth by the SDM. Tr. 100-02.

As discuss *supra*, the ALJ gave "partial weight" to the state agency consultants' light assessments. Tr. 23. The ALJ's analysis of Dr. Lee's opinion alone is not inconsistent with *Morgan*. However, because the ALJ did not differentiate between the identical opinions of the SDM and Dr. Lee, and he erred in giving weight to the SDM opinion, it cannot be determined how the ALJ would independently analyze Dr. Lee's opinion if he knew the other opinion was from a SDM and not a physician. *See Morgan*, 531 Fed. App'x at 795. Due to the ALJ's error in analyzing the SDM opinion, the ALJ also erred in analyzing Dr. Lee's opinion. On remand, the ALJ is instructed to reevaluate the weight given to Dr. Lee's opinion.

### 2. *Dr. Paul Emmans*

Dr. Emmans gave multiple opinions regarding Plaintiff's functioning and limitations. In 2011, Dr. Emmans opined that Plaintiff was limited performing sedentary work 11 to 20 hours per week. Tr. 406-08. In April 2013, he opined Plaintiff was limited to sedentary work up to 10 hours per week. Tr. 412-13. In June 2013, he again opined Plaintiff was limited to sedentary work up to 10 hours

per week. Tr. 428-29. In August 2013, he opined Plaintiff was limited to sedentary work with no limitation on hours. Tr. 416-17. In October 2013, he opined Plaintiff was limited to sedentary work, but could work no hours per work. Tr. 421-22. In 2015, he opined Plaintiff was limited to 11 to 20 hours per week of sedentary work, Tr. 301, but also opined Plaintiff was "severely limited," meaning unable to lift at least two pounds or unable to stand or walk, Tr. 302. In 2016, Dr. Emmans opined Plaintiff was limited to one to 10 hours of sedentary work per week. Tr. 449-50.

The ALJ gave "limited weight" to all seven of Dr. Emmans' treating opinions over a five-year period, Tr. 24, in favor of Dr. Lee's reviewing opinion. The Court has determined that the ALJ erred in evaluating Dr. Lee's opinion. Accordingly, on remand, the ALJ is directed to reevaluate the medical opinion evidence in its entirety.

Although the ALJ offered several reasons for discounting the various opinions, Defendant defended only three of the reasons offered. ECF No. 21 at 15-17. For the purposes of remand, the Court notes that the ALJ summarily concluded that because Dr. Emmans completed several forms between 2011 to 2016, his assessments were temporary in nature. Tr. 24. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a

ORDER - 15

continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A)

(same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating

physicians' short-term excuse from work was not indicative of "claimant's long-

term functioning"). Here, while the opinions had some variance in the limitation

on hours, all of Dr. Emmans' opinions limited Plaintiff to sedentary work, and

every opinion except one indicated Plaintiff could work 20 hours or less in a week.

Tr. 301-02, 406-08, 412-13, 416-18, 421-22, 428-29, 449-50. In October 2013, Dr.

Emmans opined the limitations would likely last six months or longer. Tr. 422.

Further, in February of 2015, in response to the question "Is this person's condition

permanent and likely limit their ability to work, look for work, or train for work?"

Dr. Emmans answered "yes." Tr. 440. The ALJ may not summarily dismiss all

seven opinions as "temporary." On remand, the ALJ is directed to address each

individual opinion's limitations and duration.

Next, the ALJ found that Dr. Emmans' May 2011, June 2013, and August

2013 opinions were not supported by further explanation or objective evidence.

Tr. 24. Relevant factors to evaluating any medical opinion include the amount of

relevant evidence that supports the opinion, the quality of the explanation provided

in the opinion, and the consistency of the medical opinion with the record as a

whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*,

495 F.3d 625, 631 (9th Cir. 2007). Therefore, a medical opinion may be rejected

by the ALJ if it is inadequately supported by medical findings. *Bray*, 554 F.3d at 1228. Defendant argues the ALJ properly rejected the opinions as unsupported by further explanation or objective evidence. ECF No. 21 at 15. However, the ALJ made no such finding regarding the April 2013 opinion, October 2013 opinion, nor the May 2016 opinion. Tr. 24. As such, the reasoning cannot be applied to the opinions where the ALJ gave no such reasoning. *See Bray,* 554 F.3d at 1226-27. On remand, the ALJ is instructed to evaluate each opinion, including assessing the support offered by the medical source and consistency with the medical evidence. In conclusion, the ALJ is instructed to reconsider Dr. Emmans' opinions and incorporate the limitations into the RFC or give specific, legitimate reasons for rejecting each of the opinions.

   *3. Dr. Jennifer Schultz*

   Dr. Schultz conducted a consultative exam in June of 2015. Tr. 352-56. Dr. Schultz diagnosed Plaintiff with PTSD, opioid use disorder and a rule out of cannabis use disorder. She opined Plaintiff's "level of adjustment is poor" and her prognosis was "poor" due to a lack of treatment. Tr. 356. Dr. Schultz opined Plaintiff could manage her funds and stated her ability to understand and reason is "impacted by her substance use and lack of treatment," but her memory is "adequate." *Id.* She opined Plaintiff's social interaction is "limited" but noted Plaintiff stated she could not be in crowds but volunteers at fire department events.

*Id.* She further opined Plaintiff's ability to tolerate or adapt to stress was poor. *Id.* As Dr. Schultz's opinion is contradicted, the ALJ was required to give specific and legitimate reasons that are supported by substantial evidence to reject her opinion. *See Bayliss*, 427 F.3d at 1216 (citation omitted).

The ALJ gave Dr. Schultz's opinion "limited weight," reasoning the assessment was "very vague." Tr. 25. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228. An ALJ must set "out a detailed and thorough summary of the facts and conflicting clinical evidence," state her interpretation thereof, and make findings. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (requiring the ALJ to do more than simply state conclusions). In doing so, an ALJ has an independent duty to fully and fairly develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision. *Id.*; *Armstrong v. Comm'r of Soc. Sec.,* 160 F.3d 587, 589–90 (9th Cir. 1998).

The ALJ found that while Dr. Schultz opined Plaintiff had limited social interaction, there was no description of the limitations. *Id.* The ALJ's analysis of Dr. Schultz's opinion provided specific and legitimate reasons to reject the opinion, as Dr. Schultz's brief and vague opinion did not provide an explanation

for her opinion as to the nature of the social limitations nor any quantifiable limitation, nor did she provide any reasoning or cite to any evidence in support of the opinion. *See Holohan,* 246 F.3d at 1202; *Bray,* 554 F.3d at 1228.

Plaintiff argues the ALJ should have further developed the record due to the ALJ finding Dr. Schultz's opinion vague. ECF No. 16 at 17. However, the ALJ's duty to develop the record is only triggered when there is ambiguous evidence or when the record is inadequate to allow for the ALJ to properly evaluate the evidence. *Tonapetyan,* 242 F.3d at 1150. The ALJ had adequate evidence to evaluate the case, and while the opinion was vague, the evidence was not ambiguous. As such, the ALJ had no duty to further develop the record.

The ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Schultz's opinion, and the ALJ did not have a duty to further develop the record.

### 4. Melissa Belding, LMHC

In December 2016, Ms. Belding noted Plaintiff was diagnosed with PTSD and major depressive disorder and struggled with panic and anger, and opined that Plaintiff's difficulties undermined her functionality and concentration, particularly in public settings. Tr. 521-23. She further opined Plaintiff could engage in work-related activities one to 10 hours per week, Tr. 521, and indicated the conditions

were not permanent and would likely limit Plaintiff's ability to work for six to 12 months, if she engaged in therapy. Tr. 522.

The ALJ gave Ms. Belding's opinion little weight. Tr. 25. As Ms. Belding is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[5]

First, the ALJ reasoned Ms. Belding's opinion is inconsistent with the treatment notes, which contained few objective abnormal findings. *Id.* Incongruity between a provider's opinion and treatment records or notes is a germane reason to discount an opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). A provider's observations must be "read in the context of the overall diagnostic picture" the provider draws. *Holohan*, 246 F.3d at 1205. Here, the ALJ found Ms. Belding's notes generally described Plaintiff as only "somewhat anxious," with few other objective abnormal findings. Tr. 25.

In support of Ms. Belding's opinion, Plaintiff points to single occasions when Plaintiff appeared tearful and moderately anxious, as well as scores from

---

[5] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 416.902 for claims filed after March 27, 2017. The Court applies the regulation in effect at the time of Plaintiff's filing.

questionnaires based on self-report, such as the PHQ-9. ECF No. 16 at 16-17.

However, Ms. Belding's records and treatment notes generally reflect Plaintiff was

actively engaged in treatment, participated in group discussions, completed her

assignments and was labeled only "somewhat anxious." Tr. 525-47. The ALJ's

conclusion is supported by substantial evidence and this was a germane reason to

reject Ms. Belding's opinion.

Second, the ALJ reasoned Ms. Belding's opinion contained information that

was "very sparse overall." Tr. 25. The Social Security regulations "give more

weight to opinions that are explained than to those that are not." *Holohan*, 246

F.3d at 1202. Ms. Belding opined Plaintiff could work only one to 10 hours in a

week but stated only that Plaintiff's panic and anger due to environmental triggers

impairs her functioning and concentration, particularly in public settings. Tr. 521.

Ms. Belding did not explain what would prevent Plaintiff from working more than

10 hours in a job that did not require public interaction. Ms. Belding did not

indicate Plaintiff had any other limitations, and also opined Plaintiff had no

limitations in her ability to access services, including her ability to use a phone, use

transportation services, make and keep appointments, and find locations. Tr. 522.

Given a lack of explanation for the opinion, and lack of evidence in the record to

support a limitation to less than 10 hours of work per week, this was a germane

reason to reject Ms. Belding's opinion.

Third, the ALJ reasoned Ms. Belding's opinion is temporary, as she opined Plaintiff's limitations would last six to 12 months with therapy. Tr. 25. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). As Ms. Belding's opinion indicated the limitations may last up to 12 months, this would satisfy the durational requirement. However, any error would be harmless as the ALJ gave other germane reasons for rejecting Ms. Belding's opinion. *See Molina,* 674 F.3d at 1111.

**B.    Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 16 at 17-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's]

impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d at 1163. General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

ORDER - 23

other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her physical symptoms were not entirely consistent with the evidence. Tr. 21.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found Plaintiff's symptom complaints were not supported by the medical evidence. Tr. 21. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however,

in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Regarding her physical symptoms, the ALJ noted that while Plaintiff testified she needed to use a nebulizer three times per day and inhalers every four hours, Plaintiff's respiratory symptoms improved with treatment and did not require any emergency room visits nor referrals for testing or specialists.  Tr. 22, 48, 363.  Plaintiff testified her breathing was so impaired at times her lips and fingers "get a blue tinge," but she also testified she has not been to a "respiratory doctor in years." Tr. 21, 49.

Though she reported worsening back pain and had an abnormal lumbar spine MRI in 2013, Plaintiff demonstrated an intact motor examination with no motor neurologic deficit, and she had a normal gait.  Tr. 21 (citing Tr. 283-84).  A 2015 MRI demonstrated improvement in Plaintiff's back condition, and a 2016 MRI showed marked improvement in the disc protrusion.  Tr. 22 (citing Tr. 489, 501). Plaintiff also had a negative straight leg raise test, full strength and ambulated unassisted.  Tr 22 (citing Tr. 370-71).

Regarding her mental health symptoms, the ALJ found Plaintiff's treatment records contain minimal objective evidence of a severe mental health impairment. Tr. 23, Tr. 537-45.  The consultative exam did not demonstrate symptoms at the level of severity alleged by Plaintiff, and the examiner noted inconsistencies

ORDER - 25

between the Plaintiff's statements and her records. Tr. 23, Tr. 352-56. On this

record, the ALJ reasonably concluded Plaintiff's symptoms were not as limiting as

Plaintiff claimed. This finding is supported by substantial evidence and was a

clear and convincing reason, coupled with the other reasons offered, to discount

Plaintiff's symptom complaints.

### 2. Improvement with Treatment

The ALJ found that Plaintiff's symptoms appeared to improve with

treatment. Tr. 22. The effectiveness of treatment is a relevant factor in

determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3);

*Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

(determining that conditions effectively controlled with medication are not

disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533

F.3d at 1040 (recognizing that a favorable response to treatment can undermine a

claimant's complaints of debilitating pain or other severe limitations).

The ALJ concluded that Plaintiff's physical symptoms responded to

treatment. Tr. 21-22. The ALJ noted that Plaintiff reported pain medications

decreased her pain. Tr. 21-22 (citing Tr. 283-84, Tr. 339). Plaintiff was

encouraged to taper her pain medications due to her age. Tr. 22 (citing Tr. 454-

55). Plaintiff also reported walking helped ease her back symptoms. Tr. 22 (citing

Tr. 379). Further, Plaintiff demonstrated improvement in her symptoms with

physical therapy.  Tr. 22 (citing Tr. 370-71).  Plaintiff's MRIs also showed improvement in her back impairment over time. Tr. 22 (citing Tr. 489, 501).

The ALJ also concluded that Plaintiff's mental health symptoms responded to treatment.  Tr. 23.  The record supports the ALJ's finding that Plaintiff reported improvement in her symptoms with medication.  *Id.* (citing Tr. 468).  On this record, the ALJ reasonably concluded Plaintiff's conditions improved with treatment.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 3.  *Failure to Pursue and Follow Treatment Recommendations*

The ALJ found Plaintiff's unwillingness to discontinue marijuana, failure to gain control over her diabetes, and failure to pursue additional treatment was inconsistent with Plaintiff's symptom complaints.  Tr. 21-22.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure.  *Orn*, 495 F.3d at 638.

The ALJ noted Plaintiff did not seek treatment for all of her symptoms, nor did she pursue all recommended treatment options for her symptoms.  Tr. 21. Although Plaintiff reported significant respiratory symptoms, she did not pursue ongoing treatment for her symptoms, and continued smoking up to a pack of cigarettes per day, and marijuana.  Tr. 22, 312, 363, 526.  Plaintiff's refusal to

discontinue marijuana prevented further treatment for her back impairment. Tr. 21. Plaintiff was referred for treatment at a pain clinic, but the pain clinic would not prescribe pain medications due to Plaintiff's marijuana use. Tr. 312. Her primary care physician indicated Plaintiff's insistence that she continue to use marijuana was a "problem" for him, due to his management of her pain medications. Tr. 454-55. Plaintiff also reported she could not afford a TENS unit, though it had previously provided great relief for her back pain. Tr. 489. However, Plaintiff reported continuing to buy marijuana. Tr. 526. Plaintiff was also unable to receive steroid injections for her back impairment, because she could not receive the recommended injections until she got her blood sugar under control. Tr. 21, 57, 289. Plaintiff reported a provider mentioned back surgery as an option for treating her back impairment, but Plaintiff stated she did not want to pursue surgery, though no reason was given for not pursuing it. Tr. 363.

Plaintiff argues that the ALJ's consideration of Plaintiff's failure to stop smoking marijuana or control her diabetes was inconsistent with SSR 18-3p. ECF No. 16 at 19. However, SSR 18-3p did not become effective until after the ALJ's decision and was thus inapplicable to the ALJ's decision. SSR 18-3p, 2018 WL 4945641. Further, even under SSR 18-3p, an ALJ may consider whether a plaintiff followed prescribed treatment. *Id.*

The ALJ also noted Plaintiff did not continuously pursue mental health treatment.  Tr. 23.  Plaintiff did not regularly attend counseling through much of the relevant period, and reported she had difficulty attending because of a lack of a babysitter.  Tr. 22 (citing Tr. 507).  Plaintiff was referred to begin counseling again in May 2016 but did not have an intake to begin services again until the end of July.  Tr. 22 (citing Tr. 456-57).  Plaintiff argues the ALJ did not properly consider her attempts to seek and follow treatment, her difficulties divulging information to others, and her continued symptoms even with treatment.  ECF No. 16 at 20.  However, the ALJ acknowledged Plaintiff's periods of treatment, her difficulties divulging information to others, and her ongoing symptoms.  On this record, the ALJ reasonably concluded Plaintiff's symptoms were not as limiting as Plaintiff claimed.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.  Plaintiff is not entitled to remand on these grounds.

## C.    Other Challenges

Plaintiff also raises challenges to the ALJ's analyses at steps two, three, and five.  ECF No. 16 at 4-8.  Given remand is necessary, the Court declines to address these challenges here.  However, the Court briefly addresses the following.  As noted by Plaintiff, the record contains multiple references to Plaintiff's uncontrolled diabetes and migraine headaches.  *Id.* at 4-5, Tr. 339, 362-64, 399,

474, 487, 493, 550.  While the ALJ found Plaintiff's diabetes non-severe, he did

not address migraines in his decision.  On remand, the ALJ is directed to conduct a

new step two analysis and to make a conclusion as to whether Plaintiff's migraine

disorder is a medically determinable impairment, and if so, whether the impairment

is severe.  The ALJ is further instructed to conduct a new sequential analysis on

remand, including conducting a new analysis at step three and step five, in light of

the new evaluation of Plaintiff's impairments and the medical opinion evidence.

**D.    Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits.

ECF No. 16 at 15.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of

discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, even if Dr. Emmans' opinions were fully credited, remand for further administrative proceedings is necessary to resolve conflicts in the evidence. There is variance between Dr. Emmans' opinions and some of his notes. Tr. Tr. 301-02, 406-08, 412-13, 416-18, 421-22, 428-29, 449-50, 460. Further proceedings are necessary for the ALJ to properly address the medical evidence and perform the five-step evaluation anew. On remand, the ALJ will supplement the record with

any outstanding evidence pertaining to the relevant time period and develop the record as necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 31, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 32